UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 16-11860-RGS

LUIS DIAZ

v.

MILAGROS PEREZ, et al.

MEMORANDUM AND ORDER

November 21, 2016

## INTRODUCTION

On September 12, 2016, Plaintiff Luis Diaz ("Diaz"), while a pre-trial detainee at MCI – Cedar Junction, filed an eighteen-page, handwritten complaint accompanied by an Application to Proceed Without Prepayment of Fees.  *See* Docket Nos. 1-2.  Diaz subsequently filed a motion for counsel and appointment of a guardian.  *See* Docket No. 5.  By state court order dated September 26, 2016, Diaz was committed for six months to Bridgewater State Hospital for treatment to restore him to competence so that he can stand trial.  *Id.*

## BACKGROUND

Diaz' Complaint asserts federal claims pursuant to 5 U.S.C. § 702 (right of review), 18 U.S.C. § 1349 (attempt and conspiracy), 18 U.S.C. § 1951

(interference with commerce by threats or violence), 18 U.S.C. § 1956 (laundering of monetary instruments), 28 U.S.C. § 1605(a)(5)(B) (general exceptions to the jurisdictional immunity of a foreign state), 42 U.S.C. §§ 1981 (equal rights under the law), 1983 (civil action for deprivation of rights), 1985 (conspiracy to interfere with civil rights) and state claims under the Massachusetts Tort Claims Act (M.G.L. c. 258) and Article 12 of the Massachusetts Declaration of Rights.  The case caption of the Complaint lists named defendants as well as John Doe defendants[1] and, on page 3, Diaz identifies the "Principal Defendants" as Milagros Perez of Boston, Auto Exchange of Framingham, Cruz Management of Roxbury and the Suffolk County District Attorney's Office.

Plaintiff's Complaint consists primarily of a recounting of events leading up to plaintiff's arrest, detention and prosecution for charges that Diaz describes as fabricated.  Diaz describes Defendant Milagros Perez ("MP") as a narcotics gang leader, prostitute and FBI informant.  Complaint ("Compl."), ¶¶ 3, 5, 9-11, 16, 18, 22.  Diaz describes himself as a victim of MP

---

[1] The case caption lists the Defendants as follows: "Milagros Perez and handlers, and John Doe Agents of the F.B.I. and regular police handlers in charge of her services, Cruz Management and  John Does therewith, Auto Exchange in Framingham: 275 Howard St., and John Does therein, Any and all John Doe in the Criminal Enterprise of Milagros Perez, including Angel Luis DelValle (A.K.A. Manuel Perez), Rodney Perez Villar, Luis Odahu Perez, Vannesa Perez, and John Does, et al, Auto-Exchange in Framingham, a car dealer, 274 Howard St, [and] Bosley Hair Restoration in Boston, et al."

explaining that she conspired with gang members to frame Diaz.  Compl., ¶¶ 8, 9, 11.  Diaz alleges that he was robbed at gunpoint by MP's son and that Diaz was thrown out of the apartment they shared despite the fact that Diaz was paying MP's rent.  Compl., ¶ 16.  He contends that MP conspired with her relatives to tell Diaz that she was pregnant in order to steal more than $20,000 in cash from him.  Compl., ¶ 16.  When Diaz sought the return of the money, he alleges that MP threatened him with his prison record and reminded him that she and her son were agents of the FBI and the Lawrence police.  Compl., ¶ 16.

Diaz alleges that he "was assaulted by the gang" while the police were escorting him in hand-cuffs to a police car.  Compl., ¶ 9.  He complains of a cover-up because the police failed to report the assault and the gang members were not charged.  Compl., ¶ 9.

Diaz alleges that perjured statements by several defendants, including MP, led to his indictment on June 23, 2013.  Compl., ¶¶ 12, 24.  Diaz contends that MP "illegally bought her apartment from Cruz Management" in early 2014 and subsequently pressured Cruz Management to refuse to provide Diaz with exculpatory video of the crime scene.  Compl., ¶ 7.  Diaz alleges that the "D.A. Office, along [with] the District Court of Roxbury and South Bay prison, maliciously and obstructively ignored [Diaz'] timely motions to

preserve the video tapes in the building of Cruz Management on 16 Akron St. in Roxbury for the purpose to illegally protect the criminal activities of Milagros Perez and Company in order to facilitate the perjuries used to frame [Diaz] with fabricated criminal charges so that the D.A. Office could [suborn] Milagros with [Diaz'] money and properties." Compl., ¶ 8.

Diaz complains that his first court-appointed lawyer threatened him because of Diaz' demand for preservation of the video tapes from Cruz Management.   Compl., ¶ 9.   Diaz complains that MP has intimidated witnesses and sabotaged the criminal investigation.   Compl., ¶¶ 3, 7, 10, 19. He complains that her power of intimidation extends to both prisoners and prison guards at the facilities to which Diaz is confined.   Compl., ¶ 10.   He alleges that he was "retaliated against and punished in South Bay prison for protesting about the motions and letters which [Diaz] filed in order to preserve the crucial evidence of the video tapes which [would demonstrate that] the police officers and the D.A. office [are] withholding crucial information which can demonstrate how Milagros and company managed to frame Diaz, and how the police maliciously failed to report how [Diaz] was assaulted by the gang while [he] was handcuffed behind [his] back and escorted to the police car."   Compl., ¶ 9.

Diaz complains that MP drugged him several times, enticed him to use cocaine, and, along with her son, extorted $50,000 from him. Compl., ¶¶ 22, 27. In addition to conspiring to have false charges brought against him, Diaz alleges that MP tried to recruit Diaz to commit armed robbery. Compl., ¶¶ 7-8, 13, 23.

Among other things, Diaz contends that he was persuaded by several defendants to pay $6,000 to Bosley Hair Restoration ("BHR"). Compl., ¶ 28. Diaz suspects that MP kept the BHR wig in order to provide DNA evidence to the district attorney. Compl., ¶ 28. Diaz complains that MP stole documents from his friends and step-sister's house to give to the district attorney. Compl., ¶ 14. Diaz complains that Exchange Auto Sales in Framingham sold him a defective SUV and subsequently conspired to commit fraud with MP by illegally selling the SUV. Compl., ¶¶ 1, 28.

Diaz seeks relief as follows: (1) a criminal investigation based upon the allegations in the complaint and criminal charges against any individuals directly or indirectly involved; (2) monetary damages from Milagros Perez and others for extortion; (3) monetary damages from Auto Exchange; (3) monetary damages from Bosley Hair Restoration; (4) monetary damages from any and all government agents that handled Milagros Perez and who facilitated fraud, intimidation and extortion; and (5) an order for

government officials and agents to disclose any information concerning the activities of Milagros Perez.

MOTION TO PROCEED *IN FORMA PAUPERIS*

Based on the information contained in Diaz' Application to Proceed Without Prepayment of Fees and the prison account statement submitted therewith, the court grants the motion to proceed *in forma pauperis*. The grant of this motion only relieves Diaz of the obligation to prepay the filing fee.

Unlike other civil litigants, prisoner plaintiffs[2] are not entitled to a complete waiver of the $350.00 filing fee, notwithstanding the grant of *in forma pauperis* status. Based on the information contained in the prison account statement, Diaz is obligated to make monthly payments of 20 percent of the preceding month's income credited to the his account until the $350.00 filing fee has been paid in full. The court will direct the appropriate official to withdraw payments on a monthly basis. *See* 28 U.S.C. § 1915(b)(2).

---

[2] Section 1915(h) defines "prisoner" as "any person incarcerated or detained in any facility who is accused of, convicted for, or adjudicated delinquent for, violations of criminal law or the terms and conditions of parole, probation, pretrial release, or diversionary program." 28 U.S.C. § 1915(h). Diaz is a prisoner under 1915(h) because he has been charged with crimes in Suffolk County and was initially confined to several Department of Correctional facilities before being transferred to Bridgewater State hospital in order to attempt to restore him to competency to stand trial.

## STANDARD OF REVIEW

A federal court must engage in a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity. *See* 28 U.S.C. § 1915A(a). Similarly, when a plaintiff is permitted to proceed without prepayment of the filing fee, summonses do not issue until the Court reviews the complaint and determines that it satisfies the substantive requirements of 28 U.S.C. § 1915.

The court must identify any cognizable claims, and dismiss any claims which are frivolous, malicious, fail to state a claim upon which relief may be granted, or seek monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915(e)(2); 1915A(b)(1),(2). An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim on which relief may be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

In addition to the statutory screening requirements under § 1915A, this Court has an independent obligation to inquire, *sua sponte*, into its own subject matter jurisdiction. *McCulloch v. Velez*, 364 F.3d 1, 5 (1st Cir. 2004). "Whenever it appears ... that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed. R. Civ. P. 12(h)(3). As an additional matter, when subject matter jurisdiction is lacking, there is no arguable or rational basis in law or fact for a claim, and thus the action may be dismissed *sua sponte* under § 1915. *Mack v. Massachusetts*, 204 F. Supp. 2d 163, 166 (D. Mass. 2002).

In conducting this review, the court reads Diaz' complaint with "an extra degree of solicitude," *Rodi v. Ventetuolo*, 941 F.2d 22, 23 (1st Cir.1991), due to his *pro se* status, *see id.*; *see also Strahan v. Coxe*, 127 F.3d 155, 158 n. l (1st Cir. 1997) (noting obligation to construe *pro se* pleadings liberally) (citing *Haines v. Kerner*, 404 U.S. 519, 520 (1972)).

Even under a liberal construction, however, there are a number of legal impediments to this action that warrant dismissal. Most of the claims must be dismissed and what little part of the Complaint remains is subject to dismissal for the reasons discussed below.

## APPOINTMENT OF COUNSEL AND/OR GUARDIAN AD LITEM

On November 3, 2016, Diaz filed a motion for appointment of counsel and for appointment of a guardian, at least temporarily. Diaz explains that his original complaint was filed with the help of a jailhouse lawyer at MCI Cedar Junction.  By state court order dated September 26, 2016, Diaz was committed to Bridgewater State Hospital for treatment to restore him to competence so that he can stand trial.  Diaz asks the court to waive the requirement of service of the summons and complaint on the defendants and asks the court to appoint a "temporary helper or guardian (like his criminal defense attorney)."

Diaz has been deemed incompetent to stand trial in his criminal case and attached to his motion is the final page from the state court's September 26, 2016 Order.  *See* Docket No. 5-2.  In the Order, Judge Krupp states that "[w]hile it appears defendant can be made competent, and may be able now to explain much about the participants in the legal process, [Judge Krupp has] no confidence that when faced with the stresses of a trial (or the necessary admissions at a plea), that [Diaz] would now be able to exercise a reasonable degree of rational understanding and to consult meaningfully with his counsel and make rational decisions based on her advice." *Id.*

Federal Rule of Civil Procedure 17(c) "governs a minor or incompetent's access to federal court." *Sam M. ex rel. Elliott v.. Carcieri*, 608 F.3d 77, 85 (1st Cir. 2010).  In pertinent part, Fed. R. Civ. P. 17(c)(2) states that "[t]he court must appoint a guardian ad litem—or issue another appropriate order-to protect a minor or incompetent person who is unrepresented in an action."  The capacity of an individual to bring suit in federal court is determined by the law of the individual's domicile.  *See* Fed. R. Civ. P. 17(b)(1).  Under Massachusetts law, an incompetent or incapacitated person cannot litigate an action *pro se*; his guardian other representative must sue on his behalf.  *See* Mass. R. Civ. P. 17(b).

Generally, the court will decide an issue of incompetency and need for protection based on evidence.  *See Powell v. Symons*, 680 F.3d 301, 310 (3d Cir. 2012); *Ferrelli v. River Manor Health Care Ctr.*, 323 F.3d 196, 200 (2d Cir. 2003).  The Court's concerns over Plaintiff's legal capacity to bring the instant civil action are different from the concerns of a court in determining mental competency of a defendant in a criminal matter.  *See Forte v. Cty. Of Merced*, No. 11-cv-318, 2013 WL 3282957 at * 1 (E.D. Cal. June 27, 2013) (noting that in a criminal case there is a constitutional right under the Sixth Amendment to assistance of counsel which is impaired if the defendant cannot cooperate effectively with the appointed counsel).

Here, the Court is concerned with due process and Plaintiff's ability to assert factual allegations in support of his claims. The First Circuit has not addressed the application of Rule 17(c)(2) under these circumstances. The Third Circuit, however, has said, "this inquiry [as to the application of Rule 17] would usually occur after the preliminary merits screening under 28 U.S.C. § 1915A or 28 U.S.C. § 1915(e)(2)." *Mahoney v. Hearst Corp.*, No. CIV.A. 13-12994-LTS, 2015 WL 686814, at *1–2 (D. Mass. Feb. 18, 2015) citing *Powell v. Symons*, 680 F.3d at 307. Based on the pleadings as well as the state court finding that Diaz may be able now to explain much about the participants in the legal process, the Court will not conduct a Rule 17 hearing or appoint a representative at this time. Accordingly, this Court will screen the original complaint and allow Diaz to show cause why this action should not be dismissed.

## DISCUSSION

### I. Private Citizens Lack a Judicially Cognizable Interest in the Prosecution or Non-prosecution of Another person

"[A] private citizen has no authority to initiate a federal criminal prosecution," nor to seek other relief based on alleged violations of federal criminal statutes. *Cok v. Cosentino*, 876 F.2d 1, 2 (1st Cir.1989); *see also, e.g., Fuller v. Unknown Officials from the Justice Dep't*, 387 Fed. Appx. 3, 4 (D.C.Cir. 2010) ("there is no private cause of action for perjury, subornation

of perjury, false declarations before a grand jury or court, or false statements"
in violation of various federal criminal statutes).  Plaintiff's complaint is
fatally defective, because he is asking the Court to initiate a criminal
investigation, and bring criminal charges against the named Defendants and
others.  Such relief cannot be granted in this action because federal courts
are not authorized to conduct or compel criminal investigations.  *See
generally In re United States*, 441 F.3d 44, 58 (1st Cir 2006) (noting that
"the federal courts in the American criminal justice system generally do not
have the power to act as investigators or prosecutors of misconduct," and
that "such powers are usually exercised by the grand jury and the executive
branch.").

Under the United States Constitution, it is the Executive Branch of the
federal government, and not the Judicial Branch, that is responsible for
conducting criminal investigations, and bringing criminal charges, if
warranted.  The Constitution precludes the federal courts from interfering in
these responsibilities of the Executive Branch. *See United States v. Nixon*,
418 U.S. 683, 693 (1974) ("the Executive Branch has exclusive authority and
absolute discretion to decide whether to prosecute a case"); *United States v.
Smith*, 231 F.3d 800, 807 (11th Cir.2000) ("The decision as to which crimes
and criminals to prosecute is entrusted by the Constitution not to the

judiciary, but to the executive who is charged with seeing that laws are enforced."), *cert. denied*, 532 U.S. 1019 (2001).

Therefore, the Court lacks the authority to conduct or initiate a criminal investigation or complaint, as Plaintiff requests.

II.    No Private Right of Action for Violations of Criminal Law

To the extent Diaz asserts claims under 18 U.S.C. §§ 1349, 1951, 1956, this Court is without subject matter jurisdiction because these criminal statutes provide no right of action for private parties.

Title 18 U.S.C. § 1349 imposes criminal penalties on persons who attempt or conspire to commit health care fraud. Because 18 U.S.C. § 1349 doesn't provide a private right of action, Diaz' claim under this criminal statute fails as a matter of law.  See *Collins v. Mortg. Elec. Registration Sys., Inc.,* No. 3:11–cv–00264, 2012 WL 610191 (M.D. Tenn. Feb. 24, 2012) (dismissing claims brought under 18 U.S.C. §§ 1349, 1346, and 1350).

Title 18 U.S.C. § 1951 (interference with commerce by threats or violence), the Hobbs Act, is a criminal statute, and "federal courts have consistently found that the Hobbs Act does not support a private cause of action." *Campbell v. Austin Air Sys., Ltd.*, 423 F.Supp.2d 61, 72 (W.D.N.Y. 2005); *see also Wisdom v. First Midwest Bank of Poplar Bluff*, 167 F.3d 402, 409 (8th Cir. 1999) ("[N]either the statutory language of 18 U.S.C. § 1951 nor

its legislative history reflect an intent by Congress to create a private right of action."); *Bajorat v. Columbia–Breckenridge Dev. Corp.*, 944 F.Supp. 1371, 1377–78 (N.D.Ill.1996) (listing cases that have uniformly held that the Hobbs Act does not carry an implied private right of action). Thus, this Court concludes that the Hobbs Act provides no private cause of action for Plaintiff's extortion claims against the defendants.

Similarly, Title 18 U.S.C. § 1956 (laundering of monetary instruments), is a criminal statute and cannot be enforced by way of a private civil suit. *See Aldabe v. Aldabe*, 616 F.2d 1089, 1092 (9th Cir.1980) (per curiam); *see also Barrett v. City of Allentown*, 152 F.R.D. 50, 55 (E.D. Pa. 1993) ("No civil action has been held to exist under either 18 U.S.C. § 1952 or 18 U.S.C. § 1956.").

III.   Administrative Procedure Act

Plaintiff's complaint references a provision of the Administrative Procedure Act ("APA") that governs judicial review of agency action. *See* 5 U.S.C. § 702 (right of review). However, the APA concerns federal agency action and not action by state or local agencies. Because the complaint does not concern any federal agency action, Section 702 does not grant this Court jurisdiction over any of the defendants.

IV.    Foreign Service Immunities Act

Plaintiff's complaint references a provision of the Foreign Sovereign Immunities Act of 1976 (the "FSIA").  *See* 28 U.S.C. § 1605(a)(5)(B) (general exceptions to the jurisdictional immunity of a foreign state).  Section 1605(a)(5)(B) provides that instrumentalities of a foreign state may not be sued in the United States on a claim of malicious prosecution.  *Id.*  As such, FSIA does not grant this Court jurisdiction for any of plaintiff's claims.

V.    The District Attorney's Office

The Complaint names the District Attorney's Office as a defendant.  It is a reasonable inference that Diaz seeks to hold Daniel F. Conley, the Suffolk County District Attorney, liable based on the actions of his employees.  Such claims are based on a theory of *respondeat superior* liability, which is not available in civil rights actions under 42 U.S.C. § 1983.  "It is well-established that 'only those individuals who participated in the conduct that deprived the plaintiff of his rights can be held liable'" under Section 1983.  *Velez-Rivera v. Agosto-Alicea*, 437 F.3d 145, 156 (1st Cir. 2006) (quoting *Cepero-Rivera v. Fagundo*, 414 F.3d 124, 129 (1st Cir. 2005)).[3]

---

[3] To the extent Diaz brings seeks to hold the Suffolk County District Attorney liable for direct actions taken in connection with Diaz' criminal case, the district attorney and his assistants are entitled to absolute prosecutorial immunity from suit for the acts alleged in the complaint, as the allegations concern conduct as an advocate for the state or for conduct closely associated with the judicial phase of the criminal process. *See Van de*

Additionally, any claims for money damages against the District Attorney, and his assistants, based on their official capacities are barred because the Eleventh Amendment precludes federal courts from hearing state claims brought against state officials in their official capacities. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 101-02 (1984); *J.R. v. Gloria*, 593 F.3d 73, 82 (1st Cir. 2010); *Johnson v. Rodriguez*, 943 F.2d 104, 108 (1st Cir. 1991) ("It is settled beyond peradventure, however, that neither a state agency nor a state official acting in his official capacity may be sued for damages in a § 1983 action.").[4]

## VI.    Civil Rights Act

Diaz asserts claims pursuant to 42 U.S.C. §§ 1981 (equal rights under the law), 1983 (civil action for deprivation of rights) and 1985 (conspiracy to interfere with civil rights).  In his Complaint, he claims that the defendants conspired to suborn perjury and fabricate charges against him, however, he has not distinguished these claims, has failed to allege a common agreement and has failed to specify the bases for these claims.  Plaintiff seeks relief

---

*Kamp, et al., v. Goldstein*, 555 U.S. 335, 343 (2009); *Buckley v. Fitzsimmons*, 509 U.S. 259, 272-73 (1993); *Imbler v. Pachtman*, 424 U.S. 409, 431 (1976).

   [4]The Eleventh Amendment extends to confer immunity from suit upon state officials when "the state is the real substantial party in interest," that is, when "the judgment sought would expend itself on the public treasury …, or interfere with the public administration …. " *Pennhurst State Sch. & Hosp.*, 465 U.S. at 101-102, n. 11.

under 42 U.S.C. § 1981, which protects the right of all persons within the United States to make and enforce contracts without respect to race. 42 U.S.C. § 1981.  To state a claim under § 1981, a plaintiff must show that (1) he is a member of a racial minority; (2) the defendant discriminated against him on the basis of her race; and (3) the discrimination implicated one or more of the activities listed in the statute, including the right to make and enforce contracts.  *Hammond v. Kmart Corp.*, 733 F.3d 360, 362 (1st Cir. 2013) (internal citations omitted), *cert. denied*, 134 S.Ct. 1889 (2014).  At no place in the complaint does Diaz allege that he is a member of a racial minority or that he suffered discrimination consequent to his race.  Neither has the plaintiff alleged any facts that would support such contentions.  Having failed to allege two of the requisite elements to state a claim under 42 U.S.C. § 1981, or facts supporting those elements, such claim should be dismissed.

Section 1983 creates a private right of action through which plaintiffs may recover against state actors for constitutional violations.  *Goldstein v. Galvin*, 719 F.3d 16, 24 (1st Cir. 2013) citing *Rehberg v. Paulk*, 132 S.Ct. 1497, 1501–02 (2012).  Private conduct, no matter how discriminatory or wrongful, is generally beyond the reach of Section 1983.  *González–Maldonado v. MMM Healthcare, Inc.*, 693 F.3d 244, 247–48 (1st Cir. 2012); *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49–50 (1999).  Nonetheless,

private individuals who are not state actors may be deemed "governmental" where there is a sufficiently close nexus such that it can be said that the government is responsible for the specific conduct of which the plaintiff complains or where government actors possess such influence over a nominally private entity that there exists public entwinement in the management and control of the entity. *Id.*; *see also Destek Group, Inc. v. State of New Hampshire Public Utilities Commission*, 318 F.3d 32, 40 (1st Cir. 2003) ("Only when a private individual's conduct can be deemed 'fairly attributable to the State' will a § 1983 cause of action exist against that individual") (internal quotations omitted).

Here, Diaz seeks to argue that the private defendants conspired with or acted on behalf of law enforcement. However, these claims fail because Diaz makes no specific factual allegations that any of the private defendants violated his rights[5] under federal law and the allegations of conspiracy are conclusory and insufficient to state a claim.

Section 1985 concerns conspiracies to violate civil rights. Section 1985(1) deals with conspiracies to prevent persons from holding office or performing duties of a public office. Section 1985(2) pertains to conspiracies

---

[5] Witnesses who testify in state court proceedings are absolutely immune from liability for damages for their testimony. *See Briscoe v. LaHue*, 460 U.S. 325 (1983) (holding all trial witnesses are immune from Section 1983 liability arising from their testimony); *Rehberg v. Paulk*, 132 S.Ct. 1497 (2012) (same, with respect to grand jury testimony).

to obstruct justice or to interfere with witnesses.  Section 1985(3) deals with conspiracies intended to deprive an individual or class of persons of protected rights based on "some racial, or perhaps otherwise class-based, invidiously discriminatory animus." *Aulson v. Blanchard*, 83 F.3d 1, 3 (1st Cir. 1996) (quoting *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).

Diaz has made no allegations which indicate that any defendant conspired against him in order to prevent the holding or performance of duties related to a public office or that defendants were motivated by discriminatory animus.  The allegations concerning a conspiracy to obstruct justice are based on conclusory and purely speculative assertions that the defendants entered into a conspiracy.  Thus, plaintiff's claims under Section 1985 are subject to dismissal.

VII.   Plaintiff's State Law Claims

Diaz seeks relief under the Massachusetts Tort Claims Act (M.G.L. c. 258) and Article 12[6] of the Massachusetts Declaration of Rights of the Massachusetts Constitution.  Also, the fraud claims against Bosley Hair Restoration and Auto Exchange arise under state law.

---

[6] Article 12 provides that "[n]o subject shall ... be compelled to accuse, or furnish evidence against himself." Mass. Const. pt. 1, art. 12.  Article 12 offers broad protection against self-incrimination in criminal trials.  *See Commonwealth v. Austin A.*, 450 Mass. 665, 881 N.E.2d 117, 120 (Mass. 2008).

Because the Complaint fails to state a federal claim against the Defendants for the reasons stated above, *supra.*, ¶¶ I - VI, the remaining potential state law claims are subject to dismissal.

VIII.  Plaintiff May Amend his Complaint

Diaz' Complaint is subject to dismissal pursuant to 28 U.S.C. §§ 1915(e)(2); 1915A(b)(1),(2).  Rather than dismiss the action, Diaz will be provided an opportunity to file an Amended Complaint that complies with both the directives of this Memorandum and Order and the basic pleading requirements of the Federal Rules of Civil Procedure.

The Amended Complaint must include, among other things, "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  This statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests," *Rivera v. Rhode Island*, 402 F.3d 27, 33 (1st Cir. 2005) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)), such that the defendant is afforded a "meaningful opportunity to mount a defense."  *Díaz-Rivera v. Rivera-Rodríguez*, 377 F.3d 119, 123 (1st Cir. 2004) (quoting *Rodríguez v. Doral Mortgage Corp.*, 57 F.3d 1168, 1172 (1st Cir. 1995)).  "In a civil rights action . . . , the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why." *Educadores Puertorriqueños en Acción v.*

*Hernandez*, 367 F.3d 61, 68 (1st Cir. 2004).  Although "the requirements of Rule 8(a)(2) are minimal. . .'minimal requirements are not tantamount to nonexistent requirements.'" *Id.* (quoting *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 514 (1st Cir. 1988)).  Moreover, as the United States Supreme Court has stated, under Rule 8, a plaintiff must plead more than a mere allegation that the defendants have harmed him.  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (detailed factual allegations are not required under Rule 8, but a complaint "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." quoting *Twombly,* 550 U.S. at 555).

Here, Diaz makes conclusory allegations concerning the defendants actions and combines all of his causes of action against all of the defendants.  Thus, it is unclear what legal claims he asserts against which defendants.  By asserting his claims collectively against the defendants, and by failing to provide underlying factual support for liability for each cause of action asserted, Diaz fails to comply with Rule 8.  *See Bagheri v. Galligan*, 160 Fed. Appx. 4, 5, 2005 WL 3536555, *1 (1st Cir. 2005) (unpublished decision finding complaint deficient because, inter alia, it failed to state clearly which defendant or defendants committed each of the alleged wrongful acts; "[the district court's requirement of an amended complaint] to remedy this deficiency did not demand more than the minimum necessary to satisfy

notice pleading standards."); *see also Hurney v. Carver*, 602 F.2d 993, 995 (1st Cir. 1979) (Even a *pro se* complaint must be " . . . backed up with enough supportive facts to outline the elements of the pleader's claim . . . " and courts ""need not conjure up unpleaded facts to support conclusory [allegations]."); *Atuahene v. City of Hartford*, 10 Fed. Appx. 33, *34, 2001 WL 604902, *1 (2d Cir. 2001) (unpublished decision, stating "[b]y lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [plaintiff's] complaint failed to satisfy this minimum standard . . . . ").

The Amended Complaint must clearly identify the claims and relief Diaz seeks and provide sufficient factual basis for each of the elements of the claims that he asserts. The Amended Complaint should focus on the legal claims against each defendant, and the underlying factual basis for such claims.[7] The Court also notes the "[t]he title of the complaint must name all the parties." Fed. R. Civ. P. 10(a). And the claims in the Amended Complaint must be set forth "in numbered paragraphs, each limited as far as practicable to a single set of circumstances." Fed. R. Civ. P. 10(b).

---

[7] In order to facilitate the filing of an amended complaint that comports with the above directives, the court suggests, but does not require, that Diaz use the template attached to this Memorandum and Order, as Appendix A.

Because an amended complaint completely supersedes the original complaint, plaintiff should repeat in his Amended Complaint any allegations in the original complaint that he wishes to be part of the operative complaint. *See Connectu LLC v. Zuckerberg*, 522 F.3d 82, 91 (1st Cir. 2008); *Steele v. Turner Broadcasting System, Inc.*, 746 F. Supp. 2d 231, 235 (D. Mass. 2010). Plaintiff may not, for example, incorporate by reference allegations from prior complaint into the Amended Complaint.

ORDER

ACCORDINGLY, for the reasons stated above, it is hereby ORDERED that:

(1)     Plaintiff's motion for leave to proceed *in forma pauperis* (Docket No. 2) is allowed and Plaintiff is obligated to make monthly payments of 20 percent of the preceding month's income credited to the his account pursuant to 28 U.S.C. § 1915(b)(2),  until the statutory filing fee has been paid in full;

(2)     Within 42 days of the date of this Memorandum and Order, Plaintiff shall file an Amended Complaint curing pleading deficiencies in accordance with Rule 8 of the Federal Rules of Civil Procedure by setting forth plausible claims upon which relief may be granted as to each defendant;

(3)     Plaintiff's motion (Docket No. 5) for appointment of counsel and for appointment of a guardian is denied without prejudice; and

(4)     Failure to comply with this Memorandum and Order will likely result in dismissal of this action.

SO ORDERED.

 /s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

24